UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| In re: | ) |
| | ) Case No. : 19-31537 |
| SIBAHAM LIMITED f/k/a | ) |
| MAHABIS LIMITED | ) Chapter 15 |
| | ) |
| <u>Debtor in a Foreign Proceeding.</u> | ) |

**MEMORANDUM OF LAW IN SUPPORT OF
<u>MOTION FOR CLARIFICATION AND ADDITIONAL RELIEF</u>**

Objecting Parties[1] moved for clarification of the Order Recognizing UK Proceeding as Foreign Main Proceeding (Dkt. 12 ("Recognition Order")) and request additional relief. Dkt. 27 ("Motion"). Specifically, Objecting Parties sought clarification between paragraphs 5.i. and 8 of the Recognition Order, requested leave to file an adversary proceeding before this Court for good cause shown and requested an order for the production of information related to potential insurance coverage for Objecting Parties' claims. In support of their Motion, Objecting Parties state as follows:

**STATEMENT OF FACTS**

Debtor entered administration in the UK in or around December 2018. *See* Dkt. 3, ¶¶12-13. As of July 10, 2019, the Debtor entered into liquidation. *See* Dkt. 3, ¶20. Objecting Parties' counsel ("Counsel") engaged with Debtor's administrators[2] ("Administrators) around August 2019. Administrators confirm that Debtor sold over 800,000 pairs of the slippers at issue in the proposed Adversary Proceeding. *See* Dkt. 3, ¶ 8. Further, Administrators provided that the

---

[1] PHYNJUAR SAUNDERS and DENNIS R. THOMAS, creditors ("Objecting Parties").
[2] Joint Administrators and Joint Liquidators of the Debtor are Paul William Ellison and Gareth Roberts at KRE Corporate Recovery LLP.

1

liquidation account consists of £2,368,038 and where "[t]he Debtor has no secured or preferential creditors. Unsecured claims are estimated at £3,264,551." Dkt. 3 at ¶¶ 20, 10. Requiring no marshalling of assets, the logistics of this case seem straightforward.

On September 4, 2019, Counsel provided Administrators a formal letter explaining, detailing and quantifying the nature and scope of Objecting Parties' claims ("September Proof of Debt"). *See* Dkt. 15-1. The September Proof of Debt contained a draft complaint[3], thousands of complaints from other consumers and quotes, images and material from Debtor's website, all substantiating the validity of Objecting Parties' claims. *Id*. In response to the September Proof of Debt, Administrators responded that their solicitors would respond "in due course." *See* Dkt 15-3. The next communication to the Objecting Parties came via a copy of the Order Recognizing UK Proceeding as Foreign Main Proceeding by this Court, as ordered by this Court to be noticed to undersigned Counsel.

Communications between undersigned Counsel and Administrators through September 10, 2019 included requested information such as sales figures and insurance coverage. *See* Dkt. 26, Exhibit 1; *see also* Dkt 15-3. Administrators provided none of these documents, and no explanation as to their refusal.

As of January 10, 2020, Objecting Parties submitted formal claim forms to Debtor's Administrators, although they are less detailed than the September Proof of Debt. Dkt.15-1. To date, Objecting Parties have not received any written statement from Debtor's Administrators either denying or detailing the insufficiency of Objecting Parties' claims.

---

[3] Objecting Parties included a draft Adversary Proceeding Class Action Complaint in support of the Motion for Clarification, appearing at Dkt. 27-1.

**ARGUMENT**

1. **The Purpose of Chapter 15 Supports the Requested Relief.**

Chapter 15 is intended to promote "cooperation between United States courts, trustees, examiners, debtors and debtors in possession and the courts and other competent authorities of foreign countries; greater legal certainty for trade and investment; fair and efficient administration of cross-border insolvencies that *protects the interests of all creditors* and other interested entities, including the debtor; the protection and maximization of the debtor's assets; and the facilitation of the rescue of financially troubled businesses." *In re Bear Stearns High–Grade Structured Credit Strategies Master Fund,* 374 B.R. 122, 126 (Bankr.S.D.N.Y.2007) (*emphasis added*); *accord* 11 U.S.C. § 1501(a).

The Court may not grant relief under § 1521, unless "the interests of the creditors and other interested entities, including the debtor, are sufficiently protected," 11 U.S.C. § 1522(a), and may subject any relief granted "to conditions it considers appropriate." 11 U.S.C. § 1522(b). The idea underlying § 1522 is that there should be a balance between relief that may be granted to the foreign representative and the interests of the persons that may be affected by such relief. This section gives the bankruptcy court "broad latitude to mold relief to meet specific circumstances." *Tri–Cont'l Exch.,* 349 B.R. at 636–37 (citing H.R.Rep. No. 109–31, at 116 (2005)); *see also* 11 U.S.C. § 1522(c) ("The court may, at the request of the foreign representative or an entity affected by relief granted under section 1519 or 1521, or at its own motion, modify or terminate such relief.")

The tension in this case lies between protecting the rights of creditors on the one hand and promoting the interests of comity and deference to foreign proceedings under Chapter 15 of the United States Bankruptcy Code on the other. One court has described "sufficient protection" as

3

embodying three basic principles: "the just treatment of all holders of claims against the bankruptcy estate, the protection of U.S. claimants against prejudice and inconvenience in the processing of claims in the [foreign] proceeding, and the distribution of proceeds of the [foreign] estate substantially in accordance with the order prescribed by U.S. law." *In re Artimm, S.r.L.*, 335 B.R. 149, 160 (Bankr. C.D. Cal. 2005) (analyzing under § 304(c) of the old code, but noting that the analysis would be "essentially the same" under § 1521(b). Objecting Parties request 1) leave to file a class action adversary proceeding before the Bankruptcy Court; and 2) discovery of insurance coverage related to Objecting Parties' claims. This relief ensures protection to Objecting Parties' as it offers adequate development of their legal claims, which they have been unable to secure through the foreign insolvency channels.

    **2. Objecting Parties' Claims are Appropriate for a Class Action Adversary Proceeding.**

The specific provisions of Chapter 15 only designate the sections of the bankruptcy code apart from Chapter 15 that apply automatically to a Chapter 15 case upon the recognition of a foreign proceeding as a main proceeding or as a nonmain proceeding. The question of which other bankruptcy code provisions may apply by court order in a particular Chapter 15 case is left open. Bankruptcy Rule 7001 lists ten separate categories of proceedings specifically denominated as adversary proceedings. Rule 7001(1) applies here as "a proceeding to recover money or property." Here, specifically as to Objecting Party, Phynjuar Saunders, the class claims for consumer protection consideration qualify as a proceeding to recover money.

Further, F.R.C.P. Rule 23 applies in adversary proceedings. *See* Fed. R. Bankr. P. 7023; *see also In re Quantegy, Inc.*, 343 B.R. 689, 693 (Bankr. M.D. Ala. 2006) (denying dismissal of a class action adversary proceeding, applying Fed. R. Civ. P 23, and concluding the adversary proceeding was not duplicative to the claims process in Chapter 11 case); *In re Livaditis*, 132 B.R.

897, 898 (Bankr. N.D. Ill. 1991) (certifying a class under Rule 23 F.R.Civ. P. of 1,404 students who enrolled in a course of cosmetology at one of the two beauty schools owned and operated by a Chapter 11 debtor).

Objecting Parties are not aware of any authority or Rule that would exclude an adversary proceeding as a corollary to this Chapter 15 case.

### 3. The Court has Jurisdiction Over the Proposed Adversary Proceeding

Albeit premature to determine the jurisdiction of a case that has not yet been filed, in considering whether this is an exercise in futility or a meaningful endeavor, a review of the Court's jurisdictional purview is helpful.

Without the anchor of a United States bankruptcy estate, the Court must look elsewhere to determine the extent of subject matter jurisdiction over related to matters in Chapter 15. The *Pacor* test, as adopted by the Eleventh Circuit in *Lemco Gypsum,* provides useful guidance. "An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.), 910 F.2d 784, 788 (11th Cir.1990) (quoting Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3rd Cir.1984), overruled on other grounds by Things Remembered, Inc. v. Petrarca, 516 U.S. 124, 129, 116 S.Ct. 494, 133 L.Ed.2d 461 (1995)).*

The first component of this analysis looks to the impact on the debtor. The second factor of this analysis, whether the proceeding "in any way impacts upon the handling and administration of the bankrupt estate," looks to how the action fits into the overall insolvency proceeding. After recognition of a foreign main or nonmain proceeding under Chapter 15, this Court plays an important role in assisting the foreign court in meeting its objectives. *See e.g.* 11 U.S.C.

5

§1501(a)(3). In considering the connection to jurisdiction under section 1334(b) in relation to a Chapter 15 case, the inquiry becomes—what impact does the action have on the handling and administration of the Chapter 15 case?

Here an adversary proceeding related to creditor and Objecting Party's claims will impact the Chapter 15 case. First, Debtor has requested and received recognition of the UK Proceeding. Through that recognition order, creditor/Objecting Party is prohibited from bringing her legal claim in another United States Court. Creditor/Objecting Party has attempted to follow the appropriate channels to establish her claim through the UK Proceeding but has not had any success in making progress towards the resolution of her claim.[4] After creditor/Objecting Party provided substantial information regarding the claims against Debtor, instead of continuing the dialogue; Debtor sought to foreclose any risk of litigation by filing this Chapter 15 proceeding. Debtor's intent becomes clear, not to protect the integrity of the UK Proceeding, but to shut down any effective means for creditor/Objecting Party to bring/ investigate her claims. This tactic has a significantly chilling effect on the legal rights of consumers in the United States.

**4. The Clarification and Relief Sought**

Paragraph 5, subpart I, of the Recognition Order prohibits Objecting Parties from bringing legal proceedings against SIBAHAM LIMITED f/k/a MAHABIS LIMITED ("Debtor"):

> No person or entity may (a) commence or continue *any legal proceeding* (including, without limitation, any judicial, quasi-judicial, administrative, or regulatory proceeding or arbitration) or action against the Debtor, its assets located in the United States, or the proceeds thereof…

(Dkt. 12 (*emphasis added*).) The Recognition Order also states:

---

[4] See Dkt. 26, Objecting Parties detail their efforts to obtain discovery and resolve their claims with Debtor before Debtor's filing of this Chapter 15 Proceeding and the interplay of UK insolvency law.

> The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order, as well as any requests for additional relief, any adversary proceeding brought in and through this Chapter 15 case, and any request by any entity for relief from the provisions of this Order

Dkt. 12, ¶8. Objecting Parties seek clarification of any conflict, or potential conflict between paragraphs 5 and 8 of the Recognition Order and leave to file an adversary proceeding.

Objecting Parties also request the discovery of any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment related to Objecting Parties' claims or to indemnify or reimburse for payments made to satisfy a potential judgment on Objecting Parties' claims.

From the challenging and obstructional history faced by Objecting Parties, they claim a factual and legal basis that their legitimate claims can only be vindicated in this Court. For these reasons, Objecting Parties request the Court grant the relief requested in their Motion [Dkt. 27] as restated below:

A. Enter an Order clarifying the Order Recognizing UK Proceedings as Foreign Main Proceeding and Granting Related Relief to allow Objecting Parties to file an adversary proceeding in this Court;

B. Enter an Order requiring Debtor to provide any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment related to Objecting Parties' claims or to indemnify or reimburse for payments made to satisfy a potential judgment on Objecting Parties' claims; and

C. Granting whatever other relief is deemed just and appropriate.

| | |
|---|---|
| Dated this 10th day of April 2020 | Respectfully Submitted, |
| The Henderson Law Firm, PLLC | Paul S. Rothstein, P.A. |
| By: /s/ James H. Henderson<br>*Local Counsel*<br>NC Bar No.: 13536<br>1120 Greenwood Cliff<br>Charlotte, North Carolina 28204<br>Tel: 704.333.3444<br>Fax: 704.333.5003<br>Email: henderson@title11.com | By: /s/ Paul S. Rothstein<br>*(Special Admission)*<br>Fla. Bar No.: 310123<br>626 N.E. 1st Street<br>Gainesville, FL 32601<br>Tel: (352) 376-7650<br>Fax: (352) 374-7133<br>Email: psr@rothsteinforjustice.com |

*Attorneys for the Objecting Parties*

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of April 2020, the foregoing and a copy of has been served on all Parties required to be served by electronically filing with the Clerk of the Court of the United States Bankruptcy Court Western District of North Carolina, Charlotte Division, by using the CM/ECF system.

/s/ *Paul S. Rothstein*
Paul S. Rothstein